# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **LD ENTERPRISES, LLC,** | ] |
| Plaintiff, | ] |
| v. | ] 2:23-cv-22-ACA |
| **TODD BURFORD, et al.,** | ] |
| Defendants. | ] |

## MEMORANDUM OPINION

Plaintiff LD Enterprises, LLC entered a contract with Defendant Todd Burford to buy the house owned by Mr. Buford and his wife, Carolyn Burford. LD Enterprises put $100,000 in earnest money in escrow with Defendant Heights Title, LLC. After delays to the closing date for the purchase, LD Enterprises increased its earnest money to $500,000, authorized the release of $375,000 of the earnest money to Mr. Burford, and promised to provide Mr. Burford with an "approval letter or proof of funds" by July 19, 2022. On July 19, LD Enterprises provided a "commitment letter" from a bank, agreeing to "offer . . . initial terms" for a line of credit to purchase the Burfords' house, subject to LD Enterprises obtaining a surety bond on the property along with some other conditions. Deeming the "commitment letter" insufficient and a breach of the contract, Mr. Burford terminated the contract and claimed the earnest money as liquidated damages.

LD Enterprises filed this lawsuit against Mr. Buford and Heights Title, seeking declaratory judgment against both defendants, damages from Mr. Burford for unjust enrichment, and specific performance from Heights Title in the form of interpleading the $125,000 that remains in escrow. (Doc. 11 at 13–16). LD Enterprises maintains that, under Alabama Code § 6-10-3, the contract between LD Enterprises and Mr. Burford to sell the Burfords' home was void because Ms. Burford never signed it.

Mr. Burford moves, under Federal Rule of Civil Procedure 12(b)(6), to dismiss the claims against him for failure to state a claim. (Doc. 13). Having considered the briefing and the arguments made at the hearing held on April 28, 2023, the court **WILL GRANT** Mr. Burford's motion to dismiss because LD Enterprises cannot establish that the contract was void.

### I.   BACKGROUND

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). The court may also consider documents a plaintiff attaches to a complaint. *See Hoefling v. City of Mia.*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss . . . ."). But the court may not consider

evidence attached to a defendant's motion to dismiss unless that evidence was incorporated into the complaint by reference, of undisputed authenticity, and central to the plaintiff's claims. *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007).

As an initial matter, Mr. Burford submits for the court's consideration two documents outside the pleadings: a title affidavit and a residence affidavit. (Doc. 13 at 15–17). LD Enterprises objects to the court's consideration of the documents because the amended complaint does not refer to either. (Doc. 17 at 4–6). The court agrees with LD Enterprises that it cannot consider the two affidavits. *See Fin. Sec. Assurance, Inc.*, 500 F.3d at 1284. In any event, even if the court concluded that it could consider the affidavits, those documents are not necessary or helpful in resolving this motion to dismiss.

With that in mind, the facts for purposes of this motion to dismiss are that the Burfords, a married couple, resided in a house located in Mountain Brook, Alabama. (Doc. 11 at 3 ¶ 2). On May 22, 2022, Mr. Burford signed a contract to sell the house and some furniture to LD Enterprises for $4,375,000. (*Id.* at 3–4 ¶¶ 6–7; doc. 11-3).

Under the contract, LD Enterprises agreed to provide $100,000 in earnest money, to be held in escrow. (Doc. 11 at 5 ¶ 13; doc. 11-3 at 2, 4). The contract provided that "[i]f the Contract is accepted and signed by all parties and the sale does not close, a separate mutual release signed by all parties to this Contract will be

required before the Earnest Money will be disbursed." (Doc. 11-3 at 4 ¶ 5). Later in the same provision, the contract stated: "In the event of default by [LD Enterprises], all deposits made hereunder may be forfeited as liquidated damages at the option of [Mr. Burford], provided [Mr. Burford] agrees to the cancellation of this Contract." (*Id.*). Alternatively, in the event of a default by LD Enterprises, Mr. Burford could "elect to pursue his . . . available legal or equitable remedies against [LD Enterprises]." (*Id.*).

In compliance with the contract, LD Enterprises escrowed the $100,000 in earnest money with Heights Title. (Doc. 11 at 5 ¶ 13). After a delay in closing, the parties agreed to a new closing date in exchange for LD Enterprises adding another $400,000 in earnest money and the release of $100,000 of the escrowed funds to Mr. Burford, to be credited as earnest money at closing. (*Id.*; doc.11-5 at 2).

The new closing date passed without the parties closing the sale. (*See* doc. 11 at 6–7 ¶ 17; doc. 11-7 at 2). Almost two weeks later, the parties signed an addendum to the contract, providing that LD Enterprises would release $275,000 of the escrowed money to Mr. Burford in exchange for (1) a thirty-day extension of time to close the escrow, (2) application of the funds toward the purchase price of the house, "and . . . [LD Enterprises] to provide [Mr. Burford] with a [sic] approval letter or proof of funds from ~~Axis Capital~~ on or before 7/19/2022." (Doc. 11-7 at 2)

4

(strikeout in original). Mr. Burford's wife never signed the contract or any of the addenda. (Doc. 11 at 4 ¶ 9, 4 ¶ 11, 5 ¶ 14, 7 ¶ 18).

Immediately after Mr. Burford and LD Enterprises executed the addendum, Heights Title released $275,000 to Mr. Burford. (Doc. 11 at 8 ¶ 19). On July 19, 2022, LD Enterprises sent Mr. Burford a document from Louisiana National Bank stating "the initial terms" of a line of credit to LD Enterprises for the purchase of the Burfords' property. (Doc. 11 at 8 ¶ 20; doc. 11-8 at 2–3). The letter stated that "[t]he terms of the line of credit are subject to change" and included requirements that LD Enterprises obtain a surety bond on the property in favor of Louisiana National Bank, a post-closing appraisal on the property, and documentation "supported by any appropriate ancillary documents such as insurance, (fire, flood, liability), resolutions, etc." (Doc. 11-8 at 2–3). Louisiana National Bank titled the document a "commitment letter" while also referring to it as a "term sheet." (*Id.*).

In response, Mr. Burford's attorney wrote LD Enterprises a letter denying that the "commitment letter" constituted an "approval letter or proof of funds." (Doc. 11 at 8 ¶ 22; doc. 11-9 at 2). Mr. Burford stated that LD Enterprises was in breach of the contract and that he was exercising his right, under the contract, to terminate the contract and forfeit "[a]ll remaining Earnest Money" as liquidated damages. (Doc. 11 at 8–9 ¶ 23; doc. 11-9 at 2). The earnest money that has not yet been released to Mr. Burford remains in escrow with Heights Title. (Doc. 11 at 10 ¶ 26).

## II.   DISCUSSION

The claims relevant to Mr. Burford's motion are: (1) LD Enterprises' request for a declaratory judgment that the contract was void as a matter of law ("Count One"); (2) LD Enterprises' request for a declaratory judgment that Mr. Burford has no legal right to any of the escrowed funds ("Count Two"); and (3) LD Enterprises' request for compensatory damages for unjust enrichment ("Count Three"). (*Id.* at 13–15). All of these claims rest on LD Enterprises' contention that Alabama Code § 6-10-3 voids the contract between Mr. Burford and LD Enterprises because Ms. Burford never signed the contract or addenda.[1] (*See id.* at 10–12 ¶¶ 27–34, 13 ¶¶ 39–40, 14 ¶ 45, 15 ¶ 49).

Mr. Burford moves to dismiss all three claims against him on the grounds that (1) a buyer of property cannot use § 6-10-3 to void a contract to purchase the property; (2) even if it were applicable, § 6-10-3 voids only actual conveyances of property, not contracts to convey property; and (3) the allegations and documents attached to the amended complaint affirmatively show that LD Enterprises breached the contract, giving him the right to terminate the contract and keep the earnest money. (Doc. 13 at 7–8, 11). He also moves to dismiss Count Three on the ground

---

[1] At the hearing held on April 28, 2023, LD Enterprises argued for the first time that the contract is also invalid because it purports to sell personal property owned at least in part by Ms. Burford. This theory was not presented in the complaint or argued in any of the briefs. As a result, the court will not consider that argument. *See Hernandez v. Plastipak Packaging, Inc.*, 15 F.4th 1321, 1330 (11th Cir. 2021).

6

that the existence of a written contract precludes an unjust enrichment claim. (*Id.* at 9–11).

Alabama Code § 6-10-3 provides in relevant part: "No mortgage, deed or other conveyance of the homestead by a married person shall be valid without the voluntary signature and assent of the husband or wife . . . ." Under Alabama Code § 6-10-2, a homestead is limited to a value of $15,000 and an area of 160 acres. *See Matherly v. The Citizens Bank*, No. 1210396, __ So. 3d __, 2022 WL 15683592, at *10 (Ala. Oct. 28, 2022) ("[A] 'homestead' protected by the antialienation principle stated in § 6-10-3 [is] limited to the parameters of a 'homestead' provided in § 6-10-2."). If a homestead exceeds $5,000[2] in value and one spouse alienates it without the signature and assent of the other spouse, the nonassenting spouse "may, by filing a complaint, have the land sold and the homestead interest separated from that of the alienee." Ala. Code § 6-10-40; *see Matherly*, __ So. 3d at __, 2022 WL 15683592, at *12 (holding that a nonassenting spouse's the right to void a mortgage or conveyance under § 6-10-3 "does not apply to a mortgage or conveyance in excess of the homestead value provided in § 6-10-2 as long as the nonassenting spouse is allotted the homestead interest provided in § 6-10-40").

---

[2] Although § 6-10-2, which defines the amount and area of a homestead, was amended in 2015 to increase the maximum value of a homestead to $15,000, the Alabama legislature did not amend § 6-10-40, which permits the nonassenting spouse to have the land sold and the homestead interest separated if the homestead exceeds $5,000 in value. *See* Ala. Act 2015-484.

7

The Alabama Supreme Court has addressed the combined effect of these statutory provisions on a contract for the sale of property. In *Inman v. Goodson*, 394 So. 2d 915, 916–17 (Ala. 1981), a husband entered an option contract with the defendant, giving the defendant the right to purchase part of the property owned by the husband and his wife. The option holder elected to exercise the option and the spouses refused to convey the property, suing the option holder for a declaratory judgment. *Id.* at 917. The Alabama Supreme Court stated that "[i]t is clear that a spouse does not have to sign a conveyance of property by the other spouse which is in excess of and which reserves unto them an amount of property with a value equal to or greater than that required to constitute homestead." *Id.* at 918. In dicta, the Supreme Court explained that if the contract had included the value or area required for homestead, "the grantor could withdraw the exemption portion from the operation of the option contract." *Id.* "[T]hus, the trial court erred in holding, as a matter of law, that the option was invalid because [the wife] did not sign it." *Id.* The Alabama Supreme Court recently explained that *Inman* means that "because the property at issue exceeded the value of a 'homestead,' the conveyance of the property did not require the assent of the other spouse and that, even if the property exceeded the value of a 'homestead' only with the residence included, the homestead interest could be exempted and the conveyance would still be valid." *Matherly*, __ So. 3d at __, 2022 WL 15683592, at *16.

In light of the Alabama Supreme Court's clear explanation of Alabama law, this court agrees with Mr. Burford's position that § 6-10-3 does not void the contract LD Enterprises entered into with Mr. Burford. Accordingly, LD Enterprises cannot prevail on any of its claims against Mr. Burford, all of which rest on the proposition that the contract is void because Ms. Burford never signed it. (*See* doc. 11 at 13 ¶¶ 39–40, 14 ¶ 45, 15 ¶ 48). The court therefore **WILL GRANT** Mr. Burford's motion to dismiss all claims against him **WITH PREJUDICE**.

### III. CONCLUSION

The court **WILL GRANT** Mr. Burford's motion to dismiss all claims against him **WITH PREJUDICE**.

At the hearing, LD Enterprises asked that if the court rules in Mr. Burford's favor, the court allow it to amend the complaint. The court declines to rule on an oral request for leave to amend. If LD Enterprises wishes to amend its complaint, it may file a motion to amend **on or before May 15, 2023**.

The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this May 1, 2023.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE